Good morning. May it please the court, counsel. My name is MJ Hayden, and I represent Anthony Moore. At this point, I would like to reserve two minutes for rebuttal. Okay. Please watch the clock. Thank you, everyone. We're here because Mr. Moore is challenging the modification of his conditions of supervised release. Mr. Moore was originally prosecuted in Alabama, and he was released to Alaska in July of last year. Following being released to Alaska, the district court modified many of his conditions of supervision. The ones that he is challenging are outpatient substance abuse treatment, imposition of a maximum of 12 drug tests per month, abstention from all use of alcohol, warrantless searches, and the imposition that he pay $25 in restitution or 10% of his income a month. He is not challenging restitution. He's challenging the amount that the court has ordered him to pay. Could I interrupt you there, because I thought the transcript left me with the impression that, although there was some discussion back and forth, that the judge settled on $25 a month, even though that was less than 10% of his income. $25 would be less than 10% of his income. Yes, and my question really is, did the court settle on $25 a month? I believe the language in the judgment is $25 or 10%. Right, and so in the transcript, it sounded like the judge said something different. Do I have that wrong? It's possible that the judge settled on the $25 just because Mr. Moore is on Social Security and on a fixed income. Okay. What do we do if there's a discrepancy between what the judge said at the sentencing and what the judgment says? I believe the oral pronouncement is what controls. Because that clearly was my impression, that he said it would be $25. And that would control. So taking each of these factors one at a time, first, the court must look at how these factors are related to the 3553A factors and the purpose of imposing conditions of supervised release. And that would be deterrence of general and specific to the defendant, protection of the public and rehabilitation. But in looking at all of those goals, the restrictions or the conditions must not be any greater depravity of liberty than is necessary to accomplish that purpose. And they must be related to a purpose. And I think what we have here, when we start out with the substance abuse treatment requirement, as the government pointed out, it does appear that Mr. Moore didn't make a statement back in 1995 regarding cocaine use. And he has pretty much a lifelong history of substance abuse troubles in that area. So what's wrong with this condition? Well, I don't think it's related to what he needs today. Okay. So the government's response, as you know from the briefing, is that he's been incarcerated for a long time. So that's not really a very fair sample of how he's going to do once he's released. What's your response to that? My response to that is there's been no reports that he has used any controlled substances while he was incarcerated. And that's certainly possible. Okay. Do you want to discuss the 12th drug test? Yes. It falls along the same lines as the treatment. But there's just simply no rhyme or reason why 12th. One doesn't have to give 12. It's up to 12. And that's once a month. Your client has had a really bad past. I mean, he's very subject to drugs going over the side. And what there should be is enough control of him to help him rehabilitate. And I don't see the big problem of going up to once a month with the background they've got. Why would we say that's unreasonable? What is it based upon, I guess, is the question here. Your objection is that it's not sufficient. Finding in the record to justify it, that's your view? Yes, that's correct. And his history is not sufficient. Is that your view? That's my view. He's also, the way I read this, it's 12 tests per month, which is 12 times 12, which is 144 a year. Correct. So that's like three times a week. Could be, yes. And they're random, correct? Yes. And the judge said that he'd probably need to get a part-time job in order to pay his restitution, albeit a very minor amount of restitution, because his income was $474 a month, right? That is correct. Him finding employment is going to be very difficult, because he is legally blind. Well, sure, but I'm trying to get to the feasibility of 12 drug tests per month on a random basis for a person who the judge wants to be at least employed on a part-time basis. That's what I'm trying to get at. And so I noticed that he said several times in the hearing that he's going to be living on his brother's property, on a cabin or something. Yes, that's correct. But I couldn't tell where that is or how close it is to town or what it was going to take to get to town to get to the drug test 12 times a month. Is that anywhere in the record? I don't believe so. I don't think you appeal on that basis about the feasibility of complying. We are appealing the reasonableness of the 12 tests. So can you explain to me, because the clock is ticking, why is that unreasonable? What's your best argument? I think my best argument is that there's no support in the record as to how you pull this number 12 out of the air. Okay. The other factors that we are appealing is the no alcohol factor, condition. There's nothing in the record that supports use or abuse of alcohol. Let me ask you something. If we were to vacate the prohibition on alcohol, would alcohol nevertheless still come under the second special condition that prohibits him from using or possessing any mind aid? Or body altering substances? Well, there's a standard condition in most judgments for not an absolute ban on alcohol, but no use to excess. So I think when you have both of those conditions in the judgment, that one would override the other. With Judge Wood's last question, forgive me, Gordon. Well, I think Judge Wood's last question is a little bit different. You didn't appeal the second condition, and the second condition is very broad. It prohibits your client from using any mind, is it mind altering substances? Mind and or body altering substances. Yes. So wouldn't that encompass alcohol? Well, I think if there's another provision in the same judgment that allows for no excess use of alcohol, then it's implying that he can use alcohol. Well, in Vega we said that there's a tie between drug abuse, alcohol and drug abuse, and so this is a step they're trying to keep him from. It seems to me in sales there was no history of alcohol abuse. We approved the condition. And I don't see where your argument overcomes those two prior decisions of our court. Could you explain that to me? Well, I think here we have an older gentleman who has been incarcerated for quite some time, who has no history of alcohol. That was true in our other case. But there's no way I can see what you said so far distinguishes those cases where we said it was not unreasonable for the court to impose them. Yes, sir. I see I only have one minute left. Any other questions before I reserve time for rebuttal? Just reserve your time. Good morning, Your Honors. Joanne Farrington for the government in this case. To try to clarify first the question about the condition of $25 payment, I believe that in the judgment at ER 8 and at ER 6, it twice says that it's a $25 a month payment. That was over the government's objection. It's not what the government requested. That's right. So the court actually cut back in light of the limited resources of the defendant. The amount of restitution is going to be obligated to pay every month. Ten percent would have been $47, and he cut it back to $25. Something like that. That's right. So number four of the special says that defendants should not consume any alcohol. And number seven of the standard says defendants shall refrain from excessive use of alcohol. Your opposing counsel said that the standard one would override the special, but my understanding is that the special ones override the standard. I think that's correct, Your Honor. The special conditions are in addition to the standard conditions. So if they are more strict in any way, then that's what governs. What's our standard review? Abuse of discretion, Your Honor. What about the 12-drug test? What about the Stevens case, which I think says, if I can paraphrase it, that that decision, the limit has to be set by the court. I think that's what the law is in the Ninth Circuit, and that is not to be delegated to probation. Yes, traditionally, and apparently in Alabama, where Mr. Moore was originally sentenced, there is no limit on the number of drug tests that could be imposed. This Court, though, and it was entirely in the discretion of the probation officer as to how many would be appropriate at any particular time. This Court imposed a limit that, in fact, that exercise of discretion has to be exercised by the judge. The judge has to impose a maximum. But it is a maximum, and it's designed to give flexibility to the probation officer to respond to the appropriate conditions, and in this case, to allow his participation in an outpatient drug treatment program, which may, at the beginning, at least, require quite a few drug tests to make sure that he's not slipping. But, counsel, that's the part I know. I mean, I don't think there's anything in the record to suggest that this number is not feasible, Your Honor. There's nothing in the record to suggest why it was chosen. How about that? Why it was chosen, I believe, the district court said it may be appropriate, at least at the beginning, and probably it's not going to happen. He specifically said that it's likely that it's going to be random, and that he chose that number in order to give sufficient discretion to the probation officer. But isn't that what Stephen says he's not supposed to do? Well, Stephen says he's supposed to impose a maximum, not that he is supposed to be... I'm sorry, Your Honor. I didn't mean to interrupt you, forgive me, but it's just that Stephen says the court has to impose the maximum. That's the part you and I are agreeing on. But unless the court explains the maximum or how it selected that number, particularly because there was a comment about the fact that this number probably wouldn't be required of him, my question is why isn't that a delegation, an impermissible delegation under Stephen's? Well, Stephen's, as I said, imposes a maximum, and I think that the judge did explain why he imposed that number as the maximum, to give the ample discretion in light of the fact that he's going to have to be participating in that. You're missing the point. The point is that Stephen said we're not going to give them discretion and giving a not-to-exceed-maximum of 12 a month is arguably tantamount to just re-delegating discretion. It's arguably circumvention of the role of Stephen's.  I said it's arguably. So you can argue why that's not true. I would agree with that argument, Your Honor. This court has, in fact, explicitly approved an eight-test-per-month requirement, and it seems to me that when you're talking about circumscribing the probation officer's discretion, not the district court judge himself deciding how many in any particular week is going to be required. It's to cabin that discretion and to set a maximum. So how do we review it? For an abuse of discretion. Yes. It's unreasonable for the district court to conclude that in the varying circumstances, particularly at the beginning of his period of supervised release, that that many tests might be necessary. And how do we do that, counsel? How do we decide whether it was reasonable or not here? Because I don't know what the judge was thinking. Can you point to me in the transcript where I'm missing how he got there? Well, no, I don't think there is any discussion of that in the transcript. But it was he did rely on the request of the probation office, which is experienced in supervising such detainees, and particularly detainees with a serious history of drug abuse. And I think it was appropriate for him to rely on that request to guide his own decision in cabining their discretion subsequently in ordering particular drug tests. How far are we into this parole? I believe that we're about two. I did not sit down and actually count the months. I believe we're about two years into it, which means that there are three years left. So he's had this probation. Presumably he's gotten through the period of the need for 12 times a month of testing. I don't know, Your Honor. I don't know what his history has been under supervision. If that's the case, and if it's been concluded that he's successfully completed a drug treatment program, that he has no signs of any problems with alcohol abuse or any of the other conditions, other than the payment of restitution, which is ongoing and mandatory, then it's perfectly appropriate to petition the court for an additional change in those conditions of supervised release, and they're often granted. And would the government oppose it under those circumstances? It would depend on what the -. Okay, Your Honor, probably we would not oppose those changes. They would appear under those circumstances to be appropriate. Okay. And what was the basis for the alcohol prohibition? There's no record of alcohol use. There's not, but this court has recognized both the close link between substance abuse and alcohol abuse, that the two often go hand in hand. This individual's criminal history shows convictions that are often closely tied to alcohol abuse, such as joyriding and disorderly conduct. And he has a history of both depression and an apparent suicide attempt. In this case, unlike in sales, Morris says he hasn't used alcohol at all, and his last depressive episode was 30 years ago. Well, in sales, I don't believe that the defendant did have a history of alcohol abuse, nor in Carter, this court's case in Carter. But where there is a history of unstable behavior and drug abuse, this court has in both those cases approved a no alcohol condition. The defendant relies on bets, which is one case where there was no history of alcohol use. But that was a purely financial crime, no history of any violent conduct, no history of any drug problems, and this court in that situation concluded that there was an insufficient relationship either to the defendant or the underlying offense, and disapproved the no alcohol condition. But that's not the case here. Was there any evidence that he had used drugs while he was incarcerated in Alabama?  So how long had he been serving there before he came over here, came here? He was convicted in 1995. He was returned to Alaska subject to an outstanding revocation of probation order based on his federal offenses in Alabama, and then served additional time in the state. I don't recall off the top of my head the year that he was returned. He pretty much had been incarcerated since 2005, I mean since 1995 until 2012. There was a short period when he was out when he promptly reoffended and was sentenced to additional probation. Reoffended in which way? I don't know, it was a state revocation of probation. Did it involve drugs? I don't know, Your Honor. My time is up, so unless there are additional questions. Thank you. Ms. Haynes, you have a minute. Yes, ma'am. Thank you. I just wanted to comment on the 12 tests again and point out that it's almost by ordering 12 tests per month giving the probation officer a blank check as to how many they can decide they want to give. And if the judge's order for the 12, in the judge's order for the 12, he relied on the probation officer, that's kind of overstepping Stevens. Because a probation officer could say, well, Judge, how about 15? And then maybe we'll give him 15 and maybe we'll give him two. So it's leaving all the discretion up to the probation officer. It's not all the discretion. You've maximized it in 12. And the district judge specifically told him it probably would not be this much, but there will be without notice. So if you have a complaint that they're being overused, then certainly you could make that to the district court. But the record doesn't show how many times he's had alcohol tests. No, the record is void at that point. So we don't know if there's a problem at all. And all we've said is that there should be maximum place, and we've approved the establishment of a maximum. But what you're saying is 12 is too many of a maximum. What would not be reasonable? My argument is that the maximum was set at the request of the probation office. Nile, we've said in our court, we've said in our opinions you have to set a maximum if you're going to give the jurisdiction to the probation office to do these non-notice tests. We said that would be a maximum. Correct. But I think the judge needs to decide the maximum based on the record, not just the request of the probation officer. Well, that's true. Is there any indication here the judge didn't review this case when he made these? Well, Your Honor, I can say with all candor, and this is not in the record anywhere, that every time that they order urinalysis, drug urinalysis, they put in the judgment 12 per month for every case. Well, you say that's not before us. Well, there's nothing for us to rule on. Any other questions? Thank you.
judges: Wallace, Wardlaw, Christen